408 P.2d 48

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Alfred GOMEZ, Jr., Defendant-Appellant.**

**No. 7693.**

Supreme Court of New Mexico.

Nov. 1, 1965.

Rehearing Denied Dec. 7, 1965.

Charles D. Harris, Roswell, for appellant.

Boston E. Witt, Atty. Gen., James V. Noble, Roy G. Hill, Asst. Attys. Gen., Santa Fe, for appellee.

MOISE, Justice.

Defendant-appellant was tried and convicted of second degree murder in the death of one Joe Reyes. Reversal of that conviction is sought because of alleged error in denying defendant's motion for a new trial on the ground of newly discovered evidence, and because of alleged error in denying the defendant an opportunity to inspect a police report referred to during the trial.

The proof of defendant's guilt as developed at the trial through the evidence of Saul Gonzales alone is briefly to the effect that Saul Gonzales and defendant had been doing considerable drinking, and during the evening were joined by Joe Reyes. About 1:00 a. m. they went to the Reyes home, where Joe Reyes fixed a meal for the three of them. After eating, Reyes and defendant did some "arm" or "Indian" wrestling during which time defendant became sick and complained of pain in his chest. The three also drank and talked but had no arguments or disagreements. Some time after 3:00 a. m., defendant and Gonzales were leaving and had said good night when deceased suggested to Gonzales that they "go a few rounds." Gonzales removed his coat and put it on the

hood of his car and he and Reyes went across the street to a school playground. They started to spar when Gonzales, in blocking a punch with his right arm, fell to the ground. As Gonzales was getting up, he heard a sound and a grunt which scared him. He saw defendant running toward the car and heard him say, "Let's get out of here, Saul," or "Let's make it," or something to a like effect. Gonzales and defendant got in the car and drove off. Gonzales testified he said to defendant, "You didn't have to do that," and defendant "mumbled, 'He was going to get you,' or 'Getting the best of you,' or something like that." Gonzales drove defendant to his girl friend's house and let him off, and noticed at that time that defendant had a scabbard in his hand. It was a scabbard like Gonzales kept under the left front seat of his car with a hunting knife in it. Upon searching, it was found to be missing. After letting defendant out, he was seen staggering toward his girl friend's house. Gonzales then returned to the Reyes house where he was arrested.

The only other testimony connecting defendant with the killing was that of the officer who arrested him who testified that he found defendant on the floor between a bed and wall, and when he got up, a knife and scabbard identified as the knife and scabbard owned by Saul Gonzales were found on the floor where he had been lying. What appeared to be fresh blood was on the knife. The only other material evidence in the case disclosed that Reyes' body was found lying at the front of his house. There was blood on the grass, curbing and sidewalk near where he was found but none in the playground across the street or in the street. Also, a yellow-handled knife with the blade open and identified as belonging to Reyes was found close to blood spots near the curb in front of the Reyes home. Defendant did not offer any evidence, nor did he testify in his own behalf.

At the close of the State's case, the court sustained a motion to dismiss the charge of first degree murder, but overruled a motion to dismiss the second degree murder charge. The jury was instructed on second degree murder and on manslaughter. Defendant was found guilty of second degree murder.

Defendant's first point relied on for reversal asserts error in the trial court's refusal to grant a new trial because of newly discovered evidence.

The requirements which must be met before a new trial is granted because of newly discovered evidence are itemized in State v. Fuentes, 67 N.M. 31, 351 P.2d 209, as follows:

"1. Must have been discovered since the former trial.

"2. Must be such as by reasonable diligence on the part of the defendant could not have been secured at the former trial.

"3. Must be material in its object, and not merely cumulative, corroborative or collateral.

"4. Must be such as ought to produce, on another trial, an opposite result on the merits, and

"5. Must go to the merits of the case, and not merely impeach the character of a former witness."

■ Defendant asserts that his motion discloses compliance with these conditions, but he goes further and cites a rule applied in certain instances where the conviction is based on weak, unsatisfactory, or uncorroborated evidence. Watson v. State, 96 Miss. 369, 50 So. 627, is such a case. So, too, is Adams v. State, 55 Fla. 1, 46 So. 152, in which it is pointed out that where under evidence grave doubt exists concerning a defendant's guilt, some relaxation of the strict rules applicable in granting new trials because of newly discovered evidence is permissible. See also Taborsky v. State, 142 Conn. 619, 116 A.2d 433, 49 A.L.R.2d 1238, and Tyson v. State, 87 Fla. 392, 100 So. 254. It is apparent from the following quoted from State v. Fuentes, supra, and the cases cited therein, that this has been the view of this court:

"The discretion of a trial court is not to be lightly interfered with as to the granting of a motion for new trial. Nevertheless, the facts in this case 'fairly cry out' that in the interest of

justice a new trial should be granted. * * *"

Aside from the fact that the evidence upon which defendant was convicted is to our minds far from conclusive, and might even be characterized as unsubstantial, counsel who represented defendant at the trial was totally inexperienced in criminal practice and has here pleaded his own lack of knowledge and experience resulting in a denial of adequate representation of defendant at the trial. We specifically disavow any intention to hold that one convicted of crime is entitled to a second opportunity to gain acquittal simply because counsel made certain errors of judgment in the trial. Neither do we announce a rule for general application. However, under the facts here present, when the unsatisfactory proof by the state is considered, along with the inadequate defense provided at the trial, the very real possibility of a miscarriage of justice which could be overcome if all the pertinent proof is properly presented and considered, requires a reversal. State v. Houston, 33 N.M. 259, 263 P. 754; Ward v. State, 235 Ind. 531, 135 N.E.2d 509. Compare People v. Schulman, 299 Ill. 125, 132 N.E. 530, 24 A.L.R. 1022; Taborsky v. State, supra.

■■ While not intending to pass upon what specific errors of judgment occurred during the trial, it should be fairly obvious that counsel did not adequately or aggressively investigate the facts, and develop

and present a reasonable defense. Numerous possibilities in this regard will readily present themselves to a lawyer experienced in criminal practice. It is immaterial if counsel has been appointed by the court or employed by the accused or by some one in his behalf. Compare Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562 (1940); Sanchez v. State, 199 Ind. 235, 157 N.E. 1; People v. Schulman, supra. We are responsible to see that a person convicted of crime shall have a fair trial with a proper defense, and that no conviction shall stand because of the absence of either. See State v. Armijo, 35 N.M. 533, 2 P.2d 1075; State v. Garcia (Rehearing), 19 N.M. 420, 143 P. 1012; State v. Peoples, 69 N.M. 106, 364 P.2d 359.

■ We would note in passing that we do not consider our conclusion in any way to conflict with what was said in State v. Klasner, 19 N.M. 474, 489, 145 P. 679, because here an excuse for failure to attach the affidavits of the newly discovered witnesses is explained. In addition, we observe that when counsel for defendant inquired if the court would hear anything beyond the offer of the affidavits attached to the motion, the reply of the court was, "I see no point in it. * * *" Compare Adams v. State, supra, and the recent cases of Blocker v. United States, 107 U.S.App.D.C. 63, 274 F.2d 572 (1959) and Newsom v. United States, 311 F.2d 74 (C.A.5, 1962).

■ We are also .of the opinion that defendant's second point has merit. During the trial a request was made for a disclosure of the contents of a supplemental police report in the possession of the prosecutor. The court did not rule on whether defendant was entitled to examine it, and defense counsel did not pursue the matter. We consider the failure to rule to be in effect a denial of the request. Arthur v. Commonwealth, (Ky.1957), 307 S.W.2d 182.

■ Counsel learned of the supplemental police report when one of the policemen who participated in making the original report was testifying on the stand, and a notation appeared on his report that there was also a supplemental report. That defendant was entitled to see and examine the supplemental report under the circumstances is in accord with right, justice and the rationale of the decisions of the United States 'Supreme Court and of this court. See State v. Morgan, 67 N.M. 287, 354 P.2d 1002; Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and our recent decision in Trimble v. State, 75 N.M. 183, 402 P.2d 162.

The cause will be reversed and remanded with instructions to grant defendant a new trial.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.